# Group Exhibit A

Return Date: No return date scheduled
Hearing Date: 2/17/2021 9:30 AM - 9:30 AM
Courtroom Number: 2408
Location: District 1 Court
        Cook County, IL

FILED DATE: 10/20/2020 4:23 PM   2020CH06382

FILED
10/20/2020 4:23 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH06382

10845916

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

CHARLES PORTIS,                          )
                                         )
            Plaintiff,                   )
                                         )
    v.                                   )
                                         )        2020CH06382
JOHN F. McKINNEY,                        )
                                         )
            Defendant.                   )
                                         )

## COMPLAINT FOR EQUITABLE ACCOUNTING

Now comes, CHARLES PORTIS, by and through his undersigned counsel, Mark

T. Lavery, and as his Complaint for Equitable Accounting states as follows:

1.      Plaintiff, CHARLES PORTIS ("Portis") is a citizen of the State of Illinois

and is an Illinois licensed Managing Broker and a real estate developer.

2.      Defendant, JOHN F. McKINNEY ("Jack McKinney") is a  citizen of the

State of Illinois and is Vice Chairman of Cushman & Wakefield and a real estate

developer.

3.      Portis and McKinney formed a partnership to develop real estate, or

alternatively a joint venture.

4.      McKinney recruited Portis to his company, J.F.McKinney & Associates,

in 1999.  Portis was challenged with building for McKinney a successful suburban

development and leasing business, as McKinney, though in business for ten years by

then, had had no success in the Chicago suburbs.

5.      In 2004, Charles Portis took Jack McKinney to dinner at the Park Grill.

6.      McKinney thanked Portis for all his years of hard unpaid development

work to date and then proposed to Portis that McKinney will help make developments

FILED DATE: 10/20/2020 4:23 PM   2020CH06382

happen and Portis will always enjoy a piece of McKinney's upside, whether or not Portis puts money into a project. The discussion summed up and confirmed similar discussions that Portis and McKinney had had over the prior five years, as Portis had received no compensation for his development work.

7.      McKinney and Portis formed a partnership in 2004 at this dinner to work on real estate development projects.

8.      In 2005, McKinney and KZF, the partner Portis had found to construct and be 50% owner, formed Riverpark Partners LLC, co owned by McKinney@Riverpark and KZF@Riverpark.  McKinney promised Portis a share of his profits from McKinney@Riverpark's success.

9.      McKinney and Portis ultimately worked on four real estate development projects together as part of this partnership.  Each project was a separate joint venture.

10.     At the 2004 dinner, McKinney proposed to Portis two ways to participate: 1. Put in no capital and receive 25% of McKinney's upside after return of capital  or 2. Put in $30,000 (about 15% of the $275K McKinney would initially post) and receive 33% of McKinney's upside after return of both parties' capital.

11.     Portis opted for the second choice and provided McKinney with a check for $30,000 to McKinney@Riverpark.

12.     McKinney never cashed the check.

13.     After McKinney had refused to cash the check for more than a year, Portis told McKinney he would take back the check and assume that he had the "25% of upside agreement."

FILED DATE: 10/20/2020 4:23 PM   2020CH06382

14.     Portis would be contributing services ("sweat equity") to the project rather than cash or property.

15.     McKinney verbally confirmed the arrangement after Portis took back the check and confirmed the "25% upside" but nothing was formalized in writing at that time.

16.     In 2010, Portis and McKinney – on demand of Portis – put the terms of the partnership in writing. See Exhibit A.

17.     The agreement states in relevant part:

Pursuant to our discussion, this letter will reconfirm our oral contract that you are entitled to a 25% share (assuming no dilution, recapture or additional cash required from me which would modify that situation in any aggregate net positive cash flow income generated whether by rent, refinancing, proceeds greater than the equity, or sale as more appropriately addressed below. The proceeds will ignore the cost of any tax losses, etc. personal guarantees (except any funds spent by me enhancing or paying back any guarantees). This agreement continues subsequent to my death, your death, until my ownership position has expired. RiverPark-Techny - I believe my equity infusion was $385,000 (which will need to be verified) and we have received $90,000 of phantom income to date no real cash flow has been received but I personally paid 35% income taxes (32% - Federal and 3% Illinois) out of my pocket. **Thus, whenever we receive net cash a described above that exceeds my total input of capital and the payment, you shall receive 25% of that cash income.**

18.     The RiverPark project has been fully sold/leased for the last decade and has been profitable since at least 2014.

19.     By December 2017, Portis was working to secure McKinney's return of the capital that McKinney invested in the RiverPark project.  Portis knew a significant amount of capital was held in the Riverpark Partners account, allowing McKinney to claim he had not yet gotten his contribution returned.

FILED DATE: 10/20/2020 4:23 PM   2020CH06382

20.     At Portis' urging, McKinney and RiverPark investor Steve Friedman of KZF met and agreed to distribute roughly $250,000 to each side (about half of net capital at that point) in late 2017.

21.     After that meeting, Portis told McKinney, "Jack, I want you to get your capital back so I can begin realizing my 25% upside."

22.     Under his breath, McKinney muttered "Yeah, 25%, maybe, but after I get some rate of return."

23.     There had never been any agreement to provide McKinney with a rate of return.  The agreement had always been for a "Zero" rate of return. Had McKinney, a sophisticated real estate developer, wanted a rate of return, he could have easily inserted it into the 2010 document memorializing the agreement that was already six years old.

24.     In June of 2018, Portis approached McKinney again. Portis stated, "Hey Jack, you had mentioned something a while back about a rate of return on Northbrook [RiverPark], which was not our deal. Have you thought about it anymore?"

25.     McKinney stated, "Thought about what?"

26.     Portis said, "About what that rate of return should be."

27.     McKinney stated, "10 per cent, 10%. That's what I want, that's what Leaf Mountain gets. After I get 10% we'll see what's left for you."

28.     Portis communicated to McKinney that there is no rate of return in the agreement. He also reminded McKinney that to conflate his ownership interest, "sweat equity," with that of an investment partner who contributes not effort but cash and therefore receives a preferred return, is simply outlandish.

FILED DATE: 10/20/2020 4:23 PM   2020CH06382

29.     In a meeting on May 22, 2019, McKinney admitted to Portis that the

December 2010 agreement was valid and that he was not in fact entitled to a rate of

return.

30.     Portis has asked McKinney for his share of his profits from RiverPark

Partners/McKinney@Riverpark repeatedly.

31.     McKinney has provided nothing to Portis.

32.     McKinney has not provided an accounting to Portis.

33.     Portis is entitled to an equitable accounting.

34.     The accounting involves complex accounts of debt and equity and

involves valuation of real estate to determine the dollar value of McKinney's profits to

date.

35.     Portis has no adequate remedy at law because the matter involves a

dispute over the proper accounting of profits from the partnership.

WHEREFORE, Charles Portis respectfully requests that this Court order John F.

McKinney to produce an accounting to Charles Portis.

Respectfully Submitted,
Plaintiff Charlie Portis

/s/ Mark T. Lavery
Plaintiff's Attorney

Mark T. Lavery, Esq.
8926 N Greenwood Ave.
Niles, IL 60714
312-792-9533
laverylawyer@gmail.com

Return Date: No return date scheduled
Hearing Date: 2/17/2021 9:30 AM - 9:30 AM
Courtroom Number: 2408
Location: District 1 Court
       Cook County, IL

**FILED**
**11/20/2020 10:48 AM**
**DOROTHY BROWN**
**CIRCUIT CLERK**
**COOK COUNTY, IL**
**2020CH06382**

**11211870**

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | |

(08/01/18) CCG 0001 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHARLES PORTIS

(Name all parties)

v.

JOHN F. MCKINNEY

23 W. Aldon W
Lake Forest

Case No. 2020-CH-06382

✓ **SUMMONS** ☐ **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons,** not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 3

**Summons - Alias Summons**                          **(08/01/18) CCG 0001 B**

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: 43043

Atty Name: Mark T. Lavery

Atty. for: Charles Portis

Address: 8926 N. Greenwood

City: Niles

State: IL    Zip: 60714

Telephone: 312-792-9533

Primary Email: laverylawyer@gmail.com

Witness:  11/20/2020 10:48 AM DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org
Page 2 of 3

Return Date: No return date scheduled
Hearing Date: 2/17/2021 9:30 AM - 9:30 AM
Courtroom Number: 2408
Location: District 1 Court
    Cook County, IL

FILED
10/20/2020 4:23 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH06382

10845916

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| CHARLES PORTIS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     2020CH06382 |
| | ) |
| JOHN F. MCKINNEY, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

## COMPLAINT FOR EQUITABLE ACCOUNTING

Now comes, CHARLES PORTIS, by and through his undersigned counsel, Mark

T. Lavery, and as his Complaint for Equitable Accounting states as follows:

1.    Plaintiff, CHARLES PORTIS ("Portis") is a citizen of the State of Illinois

and is an Illinois licensed Managing Broker and a real estate developer.

2.    Defendant, JOHN F. McKINNEY ("Jack McKinney") is a citizen of the

State of Illinois and is Vice Chairman of Cushman & Wakefield and a real estate

developer.

3.    Portis and McKinney formed a partnership to develop real estate, or

alternatively a joint venture.

4.    McKinney recruited Portis to his company, J.F.McKinney & Associates,

in 1999. Portis was challenged with building for McKinney a successful suburban

development and leasing business, as McKinney, though in business for ten years by

then, had had no success in the Chicago suburbs.

5.    In 2004, Charles Portis took Jack McKinney to dinner at the Park Grill.

6.    McKinney thanked Portis for all his years of hard unpaid development

work to date and then proposed to Portis that McKinney will help make developments

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

### Daley Center Divisions/Departments

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

happen and Portis will always enjoy a piece of McKinney's upside, whether or not Portis puts money into a project. The discussion summed up and confirmed similar discussions that Portis and McKinney had had over the prior five years, as Portis had received no compensation for his development work.

7.     McKinney and Portis formed a partnership in 2004 at this dinner to work on real estate development projects.

8.     In 2005, McKinney and KZF, the partner Portis had found to construct and be 50% owner, formed Riverpark Partners LLC, co owned by McKinney@Riverpark and KZF@Riverpark.  McKinney promised Portis a share of his profits from McKinney@Riverpark's success.

9.     McKinney and Portis ultimately worked on four real estate development projects together as part of this partnership.  Each project was a separate joint venture.

10.     At the 2004 dinner, McKinney proposed to Portis two ways to participate: 1. Put in no capital and receive 25% of McKinney's upside after return of capital  or 2. Put in $30,000 (about 15% of the $275K McKinney would initially post) and receive 33% of McKinney's upside after return of both parties' capital.

11.     Portis opted for the second choice and provided McKinney with a check for $30,000 to McKinney@Riverpark.

12.     McKinney never cashed the check.

13.     After McKinney had refused to cash the check for more than a year, Portis told McKinney he would take back the check and assume that he had the "25% of upside agreement."

14. Portis would be contributing services ("sweat equity") to the project rather than cash or property.

15. McKinney verbally confirmed the arrangement after Portis took back the check and confirmed the "25% upside" but nothing was formalized in writing at that time.

16. In 2010, Portis and McKinney – on demand of Portis – put the terms of the partnership in writing. See Exhibit A.

17. The agreement states in relevant part:

Pursuant to our discussion, this letter will reconfirm our oral contract that you are entitled to a 25% share (assuming no dilution, recapture or additional cash required from me which would modify that situation in any aggregate net positive cash flow income generated whether by rent, refinancing, proceeds greater than the equity, or sale as more appropriately addressed below. The proceeds will ignore the cost of any tax losses, etc. personal guarantees (except any funds spent by me enhancing or paying back any guarantees). This agreement continues subsequent to my death, your death, until my ownership position has expired. RiverPark-Techny - I believe my equity infusion was $385,000 (which will need to be verified) and we have received $90,000 of phantom income to date no real cash flow has been received but I personally paid 35% income taxes (32% - Federal and 3% Illinois) out of my pocket. **Thus, whenever we receive net cash a described above that exceeds my total input of capital and the payment, you shall receive 25% of that cash income.**

18. The RiverPark project has been fully sold/leased for the last decade and has been profitable since at least 2014.

19. By December 2017, Portis was working to secure McKinney's return of the capital that McKinney invested in the RiverPark project. Portis knew a significant amount of capital was held in the Riverpark Partners account, allowing McKinney to claim he had not yet gotten his contribution returned.

20.    At Portis' urging, McKinney and RiverPark investor Steve Friedman of KZF met and agreed to distribute roughly $250,000 to each side (about half of net capital at that point) in late 2017.

21.    After that meeting, Portis told McKinney, "Jack, I want you to get your capital back so I can begin realizing my 25% upside."

22.    Under his breath, McKinney muttered "Yeah, 25%, maybe, but after I get some rate of return."

23.    There had never been any agreement to provide McKinney with a rate of return. The agreement had always been for a "Zero" rate of return. Had McKinney, a sophisticated real estate developer, wanted a rate of return, he could have easily inserted it into the 2010 document memorializing the agreement that was already six years old.

24.    In June of 2018, Portis approached McKinney again. Portis stated, "Hey Jack, you had mentioned something a while back about a rate of return on Northbrook [RiverPark], which was not our deal. Have you thought about it anymore?"

25.    McKinney stated, "Thought about what?"

26.    Portis said, "About what that rate of return should be."

27.    McKinney stated, "10 per cent, 10%. That's what I want, that's what Leaf Mountain gets. After I get 10% we'll see what's left for you."

28.    Portis communicated to McKinney that there is no rate of return in the agreement. He also reminded McKinney that to conflate his ownership interest, "sweat equity," with that of an investment partner who contributes not effort but cash and therefore receives a preferred return, is simply outlandish.

29.    In a meeting on May 22, 2019, McKinney admitted to Portis that the December 2010 agreement was valid and that he was not in fact entitled to a rate of return.

30.    Portis has asked McKinney for his share of his profits from RiverPark Partners/McKinney@Riverpark repeatedly.

31.    McKinney has provided nothing to Portis.

32.    McKinney has not provided an accounting to Portis.

33.    Portis is entitled to an equitable accounting.

34.    The accounting involves complex accounts of debt and equity and involves valuation of real estate to determine the dollar value of McKinney's profits to date.

35.    Portis has no adequate remedy at law because the matter involves a dispute over the proper accounting of profits from the partnership.

WHEREFORE, Charles Portis respectfully requests that this Court order John F. McKinney to produce an accounting to Charles Portis.

Respectfully Submitted,
Plaintiff Charlie Portis

/s/ Mark T. Lavery
Plaintiff's Attorney

Mark T. Lavery, Esq.
8926 N Greenwood Ave.
Niles, IL 60714
312-792-9533
laverylawyer@gmail.com

Return Date: No return date scheduled
Hearing Date: 2/17/2021 9:30 AM - 9:30 AM
Courtroom Number: 2408
Location: District 1 Court
    Cook County, IL

FILED
12/29/2020 1:45 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020CH06382

11649978

FILED DATE: 12/29/2020 1:45 PM   2020CH06382

**Appearance and Jury Demand \***                      **(12/01/20) CCG 0009**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHANCERY    **DEPARTMENT/_____ DISTRICT**

| | |
|---|---|
| CHARLES PORTIS | Case No.   20 CH 6382 |
|                 Plaintiff | Claimed $: _____ |
| v. | Return Date: _____ Time: _____ |
| JOHN F. MCKINNEY | Court Date: _____ Room No.: _____ |
|                 Defendant | |

Address of Court District for Filing

### APPEARANCE ████████████

☑ General Appearance    ☑ 0900 - Fee Paid    ☐ 0904 - Fee Waived

☐ Jury Demand \*
☐ 0908 - Trial Lawyers Appearance - No Fee
☐ 1900 - Appearance and Jury Demand/Fee Paid    ☐ Twelve-person Jury
☐ 1904 - Appearance and Jury Demand/No Fee Paid    ☐ Six-person Jury

The undersigned enters the appearance of: ○ Plaintiff   ◉ Defendant

Litigant's Name:   John F. McKinney

Signature:   s/Kevin M. Forde

☑ Initial Counsel of Record    ☐ Pro Se (Self-represented)    ☐ 2810 Rule 707 Out-of-State Counsel

☐ Additional Appearance    ☐ Substitute Appearance    (pro hac vice)

◉ Atty. No.: 64371    ○ Pro Se 99500

Name:   Kevin M. Forde of Forde & O'Meara LLP

Atty. for (if applicable):

Defendant

Address:   111 West Washington Street, Suite 1100

City:   Chicago

State:   IL   Zip:   60602   Phone:   312-641-1441

Primary Email:   kforde@fordellp.com

**\* Strike demand for trial by jury if not applicable.**

I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

> **IMPORTANT**
> *Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attornies) using either regular mail, fax, email or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

Pro Se Only:
☐ I have read and agree to the terms of Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _____

s/Kevin M. Forde

Attorney for   ○ Plaintiff   ◉ Defendant

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 1

Return Date: No return date scheduled
Hearing Date: 2/17/2021 9:30 AM - 9:30 AM
Courtroom Number: 2408
Location: District 1 Court
    Cook County, IL

FILED
12/29/2020 1:45 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020CH06382

11649978

Appearance and Jury Demand *

(12/01/20) CCG 0009

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

### CHANCERY DEPARTMENT/_____ DISTRICT

CHARLES PORTIS

                    Plaintiff

      v.

JOHN F. MCKINNEY

                    Defendant

Case No. 20 CH 6382

Claimed $: _____

Return Date: _____ Time: _____

Court Date: _____ Room No.: _____

Address of Court District for Filing

## APPEARANCE ▓▓▓▓▓▓▓▓▓▓▓ *

☑ General Appearance

☐ Jury Demand *

☐ 0900 - Fee Paid
☐ 0908 - Trial Lawyers Appearance - No Fee
☐ 1900 - Appearance and Jury Demand/Fee Paid
☑ 1904 - Appearance ▓▓▓▓▓▓▓▓/No Fee Paid

☐ 0904 - Fee Waived

☐ Twelve-person Jury
☐ Six-person Jury

The undersigned enters the appearance of: ○ Plaintiff ● Defendant

Litigant's Name: John F. McKinney

Signature: s/Michael K. Forde

☐ Initial Counsel of Record
☑ Additional Appearance

☐ Pro Se (Self-represented)
☐ Substitute Appearance

☐ 2810 Rule 707 Out-of-State Counsel
    (pro hac vice)

● Atty. No.: 64371 ○ Pro Se 99500

Name: Michael K. Forde of Forde & O'Meara LLP

Atty. for (if applicable):

Defendant

Address: 111 West Washington Street, Suite 1100

City: Chicago

State: IL Zip: 60602 Phone: 312-641-1441

Primary Email: mforde@fordellp.com

**IMPORTANT**

*Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, fax, email or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

Pro Se Only:

☐ I have read and agree to the terms of Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _____

* Strike demand for trial by jury if not applicable.
I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

                s/Michael K. Forde

Attorney for ☐ Plaintiff ● Defendant

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**

cookcountyclerkofcourt.org

Page 1 of 1

Return Date: No return date scheduled
Hearing Date: 2/17/2021 9:30 AM - 9:30 AM
Courtroom Number: 2408
Location: District 1 Court
    Cook County, IL

FILED
12/29/2020 1:45 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020CH06382

11649978

*FILED DATE: 12/29/2020 1:45 PM  2020CH06382*

Appearance and Jury Demand *

(12/01/20) CCG 0009

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHANCERY     DEPARTMENT/_____ DISTRICT

CHARLES PORTIS

                 Plaintiff

v.

JOHN F. MCKINNEY

                 Defendant

Case No. 20 CH 6382

Claimed $: _____

Return Date: _____ Time: _____

Court Date: _____ Room No.: _____

Address of Court District for Filing

## APPEARANCE ██████████ *

☑ General Appearance

☐ Jury Demand *

☐ 0900 - Fee Paid
☐ 0908 - Trial Lawyers Appearance - No Fee
☐ 1900 - Appearance and Jury Demand/Fee Paid
☑ 1904 - Appearance ~~and Jury Demand~~/No Fee Paid

☐ 0904 - Fee Waived

☐ Twelve-person Jury
☐ Six-person Jury

The undersigned enters the appearance of: ○ Plaintiff ● Defendant

Litigant's Name: John F. McKinney

Signature: s/Brian P. O'Meara

☐ Initial Counsel of Record

☑ Additional Appearance

☐ Pro Se (Self-represented)

☐ Substitute Appearance

☐ 2810 Rule 707 Out-of-State Counsel
    (pro hac vice)

● Atty. No.: 64371     ○ Pro Se 99500

Name: Brian P. O'Meara of Forde & O'Meara LLP

Atty. for (if applicable):
Defendant

Address: 111 West Washington Street, Suite 1100

City: Chicago

State: IL   Zip: 60602   Phone: 312-641-1441

Primary Email: bomeara@fordellp.com

**IMPORTANT**
*Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attornies) using either regular mail, fax, email or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

Pro Se Only:
☐ I have read and agree to the terms of Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _____

* Strike demand for trial by jury if not applicable.
I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

s/Brian P. O'Meara

Attorney for   ○ Plaintiff   ● Defendant

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 1 of 1

**Mickey Balestri**

| | |
|---|---|
| **From:** | enotice@cookcountycourt.com |
| **Sent:** | Wednesday, January 6, 2021 7:04 PM |
| **To:** | Mickey Balestri |
| **Subject:** | PostCard ID=CH2020CH06382___20210106000008 |

Sent by Clerk of the Circuit Court, Cook County

1  CIRCUIT COURT OF COOK COUNTY
   CHANCERY DIV., RM. 802 DALEY CTR.
   CHICAGO, IL. 60602
-
0  ID:  CH2020CH06382   20210106000008
   TO:  FORDE & O'MEARA LLP
   AT:  CLERK@FORDELLP.COM
0           * * * * * N O T I C E * * * * *
                   CASE  20-CH-06382
                   CALENDAR  04
0       PORTIS CHARLES       V.   MCKINNEY JOHN
        THERE WILL BE A CASE MANAGEMENT CALL OF YOUR CASE ON WEDNESDAY
        THE 17TH  DAY OF FEBRUARY 2021 IN ROOM 2408 AT  9:30 A.M.
        RICHARD J. DALEY CENTER, CHICAGO, IL. 60602.
        * * * *  YOU MUST APPEAR OR AN APPROPRIATE ORDER * * * *
        * * * *  MAY BE ENTERED AFFECTING YOUR RIGHTS  * * * *
        NOTE: IF THIS CASE HAS BEEN ALREADY DISMISSED OR IF THIS CASE
        HAS A COURT DATE SET BY COURT ORDER, YOU MAY DISREGARD THIS
                   NOTICE

Return Date: No return date scheduled
Hearing Date: 1/19/2021 10:00 AM - 10:00 AM
Courtroom Number:
Location:

FILED
1/11/2021 4:11 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020CH06382

11788110

FILED DATE: 1/11/2021 4:11 PM   2020CH06382

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| CHARLES PORTIS | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 20 CH 6382 |
| JOHN F. MCKINNEY | ) | Judge Alison C. Conlon |
| Defendant. | ) | |

### DEFENDANT JOHN F. MCKINNEY'S MOTION FOR EXTENSION OF TIME TO ANSWER OR OTHERWISE PLEAD

Defendant John F. McKinney ("Defendant"), by and through his attorneys, Forde &

O'Meara LLP, hereby moves this Court for an extension of time, up to and including February 8,

2021, to answer or otherwise plead to Plaintiff's Complaint for Equitable Accounting.  In support

of this motion, Defendant states as follows:

1.　　　Plaintiff filed his Complaint on October 20, 2020.

2.　　　Defendant was served with the Complaint on or about December 12, 2020, thereby

making Defendant's response due on January 11, 2021.

3.　　　Defendant recently retained counsel who is in the process of gathering information

to file the appropriate response to the Complaint.

4.　　　Defendant requests an additional 28 days, up to and including February 8, 2021, to

answer or otherwise plead to the Complaint.

5.　　　The initial case management conference is set for February 17, 2021.  Therefore,

this extension will not disturb any court dates or other deadlines.

6.　　　Defendant brings this motion in good faith and not for purposes of delay.

FILED DATE: 1/11/2021 4:11 PM   2020CH06382

7.      Today, Defendant's counsel sent an email to Plaintiff's counsel asking if Defendant could style this motion "unopposed".  At the time of the filing of this motion, Defendant's counsel has not yet received a response from Plaintiff's counsel.  If Plaintiff does not oppose this motion, Defendant will alert the Court that the motion is unopposed.

WHEREFORE, Defendant respectfully prays that this Court extend the time, up to and including February 8, 2021, for Defendant to answer or otherwise plead to Plaintiff's Complaint for Equitable Accounting, and enter whatever further relief this Court deems just and appropriate.

Dated:  January 11, 2021                         Respectfully submitted,


                                        By:      /s/ Brian P. O'Meara
                                                 One of Its Attorneys

Kevin M. Forde
Michael K. Forde
Brian P. O'Meara
Forde & O'Meara LLP – #64371
111 West Washington Street, Suite 1100
Chicago, IL  60602
(312) 641-1441
kforde@fordellp.com
mforde@fordellp.com
bomeara@fordellp.com

2

FILED DATE: 1/11/2021 4:11 PM    2020CH06382

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that he served DEFENDANT JOHN F. MCKINNEY'S MOTION FOR EXTENSION OF TIME TO ANSWER OR OTHERWISE PLEAD on counsel of record by email, via Odyssey eFileIL on the 11th day of January, 2021:

> Mark T. Lavery, Esq.
> 8926 N Greenwood Ave.
> Niles, IL 60714
> 312-792-9533
> laverylawyer@gmail.com

/s/ Brian P. O'Meara

3

FILED DATE: 1/11/2021 4:16 PM   2020CH06382

FILED
1/11/2021 4:16 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020CH06382

11788273

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| CHARLES PORTIS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 20 CH 6382 |
| | ) | |
| JOHN F. MCKINNEY | ) | Judge Alison C. Conlon |
| | ) | |
| Defendant. | ) | |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on Tuesday, January 19, 2021 at 10:00 a.m., we shall appear before the Honorable Alison C. Conlon, Circuit Court of Cook County, Room 2405, Richard J. Daley Center, Chicago, Illinois, and present DEFENDANT JOHN F. MCKINNEY'S MOTION FOR EXTENSION OF TIME TO ANSWER OR OTHERWISE PLEAD, a copy of which is herewith served upon you. Judge Conlon's Zoom information is as follows:

Zoom Meeting ID Number: 974 5431 3798
Password: 501494

/s/ Brian P. O'Meara_____

Kevin M. Forde
Michael K. Forde
Brian P. O'Meara

Forde & O'Meara LLP – #64371

111 West Washington Street, Suite 1100
Chicago, IL  60602
(312) 641-1441
kforde@fordellp.com
mforde@fordellp.com
bomeara@fordellp.com

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned attorney hereby certifies that he served the NOTICE OF MOTION on counsel of record by email, via Odyssey eFileIL on the 11th day of January, 2021:

Mark T. Lavery, Esq.
8926 N Greenwood Ave.
Niles, IL 60714
312-792-9533
laverylawyer@gmail.com

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this Certificate of Service are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

/s/ Brian P. O'Meara

FILED DATE: 1/11/2021 4:16 PM   2020CH06382

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| CHARLES PORTIS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 20 CH 6382 |
| | ) | |
| JOHN F. MCKINNEY | ) | Judge Alison C. Conlon |
| | ) | |
| Defendant. | ) | |

### <u>ORDER</u>

This case coming before the Court on Defendant John F. McKinney's Motion for Extension of Time to Answer or Otherwise Plead, the parties given due notice, and the Court being fully advised,

IT IS HEREBY ORDERED THAT:

1. Defendant's motion is granted.

2. Defendant shall answer or otherwise plead to the complaint on or before February 8, 2021.

3. The initial case management conference set for February 17, 2021 at 9:30 a.m. shall stand.

Dated: January 19, 2021          ENTERED:

Judge Alison C. Conlon

JAN 20 2021

Circuit Court – 2140

_____     _____
Judge Alison C. Conlon              Judge's No.

Forde & O'Meara LLP
Brian P. O'Meara
111 West Washington Street, Suite 1100
Chicago, IL 60602
(312) 641-1441
Firm No. 64371

FILED
2/8/2021 5:00 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020CH06382

12141236

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| CHARLES PORTIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 20 CH 6382 |
| | ) | |
| JOHN F. MCKINNEY, | ) | Judge Alison C. Conlon |
| | ) | |
| Defendant. | ) | |

**DEFENDANT JOHN F. MCKINNEY'S SECTION 2-615 MOTION
<u>TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

Defendant John F. McKinney ("Defendant" or "McKinney"), by and through his
attorneys, Forde & O'Meara LLP, hereby moves this Court, pursuant to Section 2-615 of the
Illinois Code of Civil Procedure, 735 ILCS 5/2-615, to dismiss the Complaint for Equitable
Accounting (the "Complaint") filed by Plaintiff Charles Portis ("Plaintiff" or "Portis"). In
support of this Motion, Defendant states as follows.

**I.      Introduction**

1.      Plaintiff's Complaint alleges "a dispute over the proper accounting of profits"
from an alleged partnership with McKinney. The Complaint seeks only one form of relief: an
equitable accounting. The Complaint, however, falls short of the basic pleading requirements for
such a claim. To state a claim for an accounting, a plaintiff must allege facts demonstrating both
(1) that he has no adequate remedy at law and (2) that at least one of the following conditions
applies: a fiduciary relationship, a need for discovery, fraud, or complex mutual accounts.
Portis does not do either. The Complaint fails to plead that he lacks an adequate remedy at law,
which is the gateway requirement for the remedy of an equitable accounting. The Complaint
also fails to plead facts demonstrating that *any* of the additional conditions necessary to state a

FILED DATE: 2/8/2021 5:00 PM   2020CH06382

claim for accounting exists. Therefore, this Court should dismiss Plaintiff's Complaint for failure to state a claim pursuant to section 2-615.

## II.     Facts Alleged in the Complaint[1]

2.      In 1999, McKinney hired Portis to work for his company, J.F. McKinney & Associates ("McKinney & Associates" or the "Company"). Compl. ¶ 4, attached hereto as Exhibit A.[2] Portis was responsible for the Company's development and leasing business in the Chicago suburbs. *Id.*

3.      Five years later, in 2004, McKinney took Portis to dinner. *Id.* ¶ 5. McKinney proposed to Portis that, if Portis continued to do development work for McKinney, he would enjoy a piece of McKinney's upside on each development project he worked on, whether or not he had invested money into the project. *Id.* ¶ 6.

4.      At the dinner, McKinney proposed two ways in which Portis could make money from real estate development projects that Portis worked on for McKinney & Associates. *Id.* ¶ 10. Portis could either (a) put in no capital and receive 25% of the Company's upside after the return of its capital; or (b) put in $30,000 and receive 33% of the Company's upside after the return of both his and McKinney's capital. *Id.*

5.      Portis opted for the second option. *Id.* ¶ 11. He provided McKinney with a check for $30,000. *Id.* The Complaint does not say when. McKinney, however, never cashed the check. *Id.* ¶ 12. At an unidentified time, allegedly more than a year after Portis provided the check to McKinney, Portis told McKinney that he would take the check back and "assume" that

---

[1] While McKinney disputes many of Portis' factual allegations, they are to be accepted as true solely for purposes of this motion to dismiss. *See Philip I. Mappa Interests, Ltd. v. Kendle ("Mappa")*, 196 Ill. App. 3d 703, 708 (1st Dist. 1990).

[2] The Complaint references a written agreement as "Exhibit A" thereto, but no such exhibit was attached.

2

FILED DATE: 2/8/2021 5:00 PM   2020CH06382

he could accept the first option, *i.e.*, put in no capital and receive 25% of the Company's upside after the return of capital. *Id.* McKinney verbally confirmed that arrangement, but the parties did not put anything in writing at that time. *Id.* ¶ 15.

6.      In 2005, McKinney & Associates and a construction company named KZF formed Riverpark Partners, LLC ("Riverpark Partners"). *Id.* ¶ 8. Portis had found KZF to partner with McKinney & Associates in the construction of a development project (the "RiverPark project"). *Id.* McKinney & Associates and KZF would each own 50% of Riverpark Partners. *Id.* McKinney promised Portis a share of the profits from the RiverPark project. *Id.* ¶¶ 8, 17.

7.      Sometime in 2010, Portis demanded that McKinney put the terms of their partnership in writing. *Id* ¶ 16. According to Portis, McKinney wrote the following on Portis' request:

> Pursuant to our discussion, this letter will reconfirm our oral contract that you are entitled to a 25% share (assuming no dilution, recapture or additional cash required from me which would modify that situation in any aggregate net positive cash flow income generated whether by rent, refinancing, proceeds greater than the equity, or sale as more appropriately addressed below. The proceeds will ignore the cost of any tax losses, etc. personal guarantees (except any funds spent by me enhancing or paying back any guarantees). This agreement continues subsequent to my death, your death, until my ownership position has expired. RiverPark-Techny - I believe my equity infusion was $385,000 (which will need to be verified) and we have received $90,000 of phantom income to date no real cash flow has been received but I personally paid 35% income taxes (32% - Federal and 3% Illinois) out of my pocket. **Thus, whenever we receive net cash a described above that exceeds my total input of capital and the payment, you shall receive 25% of that cash income.**

*Id.* ¶ 17 (emphasis in original).

8.      According to Portis, the RiverPark project has been "fully sold/leased for the last decade," and it has been profitable since at least 2014. *Id.* ¶ 18. Portis began trying to secure the Company's return of capital from the Riverpark Partners account in December 2017. *Id.* ¶ 19.

FILED DATE: 2/8/2021 5:00 PM    2020CH06382

At Portis' urging, McKinney & Associates met with KZF and agreed to distribute about $250,000 to each company, which Portis claims was about half of the net capital remaining in the Riverpark Partners account. *Id.* ¶¶ 19–20.

9.    After McKinney and KMZ agreed to distribute capital, Portis told McKinney "Jack, I want you to get your capital back so I can begin realizing my 25% upside." *Id.* ¶ 21. McKinney responded with, "Yeah, 25%, maybe, but after I get some rate of return." *Id.* ¶ 22. According to Portis, the parties had not agreed to provide McKinney with a rate of return. *Id.* ¶ 23. While there was some further discussion regarding an appropriate rate of return (*id.* ¶¶ 24-27), in June 2018, McKinney allegedly admitted that he (McKinney) was not entitled to *any* rate of return. *Id.* ¶ 29.

10.    On unidentified later dates, Portis asked McKinney for his share of the profits from the RiverPark project. *Id.* ¶ 30. McKinney has not provided a share of the profits, or an accounting, to Portis. *Id.* ¶¶ 31–32.

### III.    Standard for a Section 2-615 Motion to Dismiss

11.    A section 2-615 motion challenges the legal sufficiency of a complaint based on defects apparent on its face. *See, e.g.*, *K. Miller Constr. Co. v. McGinnis*, 238 Ill. 2d 284, 291 (2010); *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 368–69 (2004). A complaint fails to state a cause of action if it does not contain factual allegations in support of every element of the particular cause of action. *Mappa*, 196 Ill. App. 3d at 708.

12.    For purposes of a section 2-615 motion, all well-pleaded facts and reasonable inferences permitted to be drawn from those facts are deemed admitted. *Id.* at 707–08. Conclusions of law or of fact unsupported by allegations of specific fact are not deemed admitted. *See*, *e.g.*, *Lawson v. City of Chicago*, 278 Ill. App. 3d 628, 634 (1st Dist. 1996); *see*

FILED DATE: 2/8/2021 5:00 PM   2020CH06382

*also Knox Coll. v. Celotex Corp.*, 88 Ill. 2d 407, 426 (1981).  Although pleadings are to be liberally construed, a plaintiff remains obligated to plead facts necessary for recovery.  Liberal construction cannot cure a complaint that lacks sufficient factual averments.  *Mappa*, 196 Ill. App. 3d at 708.

## IV.     Plaintiff has Failed to Plead the Elements of an Equitable Accounting

13.     An accounting is an equitable remedy.  To sustain an action for an accounting, the plaintiff's complaint "must allege the absence of an adequate remedy at law and one of the following: '(1) a breach of a fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature.'"  *Mann v. Kemper Fin. Cos.*, 247 Ill. App. 3d 966, 980 (1st Dist. 1992) (quoting *People e rel. Hartigan v. Candy Club*, 149 Ill. App. 3d 498, 501 (1st Dist. 1986)).  Because an accounting is an equitable remedy, the trial court has broad discretion on whether to order an accounting.  *See Sharps v. Stein*, 90 Ill. App. 3d 43, 441 (1st Dist. 1980).

14.     A plaintiff may not merely assert a cause of action against a defendant.  Instead, a plaintiff's complaint "must allege sufficient facts to bring plaintiff's claim for a remedy within the scope of a legally recognized cause of action."  *Adkins v. Sarah Bush Lincoln Health Ctr.*, 129 Ill. 2d 49, 518 (1989).  In this case, to sustain a claim for an accounting, Plaintiff must plead sufficient facts to establish both (a) that he lacks an adequate remedy at law and (b) that at least one additional condition—a fiduciary relationship, a need for discovery, fraud, or complex mutual accounts—applies.  Portis has failed on both fronts.

### A.     Plaintiff has Failed to Plead the Absence of an Adequate Remedy at Law

15.     Plaintiff has failed to allege the absence of an adequate remedy at law, which is "a necessity for seeking the equitable remedy of an accounting."  *Noesges v. Servicemaster Co.*, 233

5

FILED DATE: 2/8/2021 5:00 PM    2020CH06382

Ill. App. 3d 158, 161 (2d Dist. 1992). Here, Plaintiff makes the conclusory assertion that he lacks an adequate remedy "because the matter involves a dispute over the proper accounting of profits from the partnership." Compl. ¶ 35. But Plaintiff presents no reason why a suit at law is inadequate to resolve whether he deserves a share of the profits from his alleged partnership with Defendant.

16.    Indeed, a jury can resolve questions about the distribution of profits, and there is no reason that a legal claim for money damages could not achieve the same ends for Plaintiff as a claim for an equitable accounting. As Plaintiff tells it, his "share of the profits" is 25% of the profits in the RiverPark project after the return of McKinney's capital. Assuming the truth of Plaintiff's allegations for purposes of a section 2-615 motion, it would be straightforward to resolve what Defendant owes Plaintiff.

17.    Therefore, Plaintiff has no basis on which to claim that he lacks an adequate remedy at law. For that reason, this Court should dismiss Plaintiff's Complaint for failure to state a claim.

**B.    The Complaint Fails to Adequately Allege One of the Additional Conditions Necessary for an Accounting**

18.    Plaintiff has failed to allege the existence of any of the four additional conditions necessary for an accounting, *i.e.*, a fiduciary relationship, a need for discovery, fraud, or complex mutual accounts. *Mann*, 247 Ill. App. 3d at 980.

19.    First, Plaintiff has not alleged the existence of a fiduciary relationship between Plaintiff and Defendant, and the Complaint does not frame Defendant's actions as the breach of a fiduciary duty.

FILED DATE: 2/8/2021 5:00 PM   2020CH06382

20.     Second, Plaintiff has not alleged that he needs any particular discovery.  And, to the extent that discovery is necessary, Plaintiff could obtain that discovery in an ordinary suit at law.

21.     Third, the Complaint neither mentions nor implies fraud.  To prove fraud under Illinois law, a plaintiff must prove:

> (1) that the defendant made a statement, (2) of a material nature as opposed to opinion, (3) untrue, (4) known by the person making it to be untrue, believed by him to be untrue, or made in culpable ignorance of its truth or falsity, (5) relied upon by the victim to his detriment, (6) made for the purpose of inducing reliance, and (7) such that the victim's reliance led to his injury.

*Parson v. Winter*, 142 Ill. App. 3d 354, 359 (1st Dist. 1986).  Plaintiff has not alleged that Defendant made any false statement, much less a false statement made to induce reliance.  And Plaintiff has not alleged that he relied on or was injured by any false statement.

22.     Fourth, Plaintiff does not adequately allege the existence of complex mutual accounts.  *Mann*, 247 Ill. App. 3d at 980.  At best, Plaintiff makes the conclusory assertion that the case involves "complex accounts of debt and equity and involves valuation of real estate to determine the dollar value of McKinney's profits to date."  Compl. ¶ 34.  That is insufficient.  Plaintiff provides no explanation for why the accounts are so complex that a suit at law could not resolve them.  Indeed, his allegations belie any "complex" accounting.  As shown above, *see* ¶ 15 *supra*, the alleged deal between Plaintiff and Defendant is a simple percentage of net profits on a single real estate development project that had only two investors.  That calculation is straightforward and does not require a suit in equity for an accounting to resolve.

23.     Because Plaintiff has failed to adequately plead one of the additional conditions necessary for a suit for an equitable accounting, this Court should dismiss Plaintiff's Complaint for failure to state a claim.

FILED DATE: 2/8/2021 5:00 PM   2020CH06382

## V.      Conclusion

24.      Plaintiff has failed to state a claim for an equitable accounting, which is the only remedy that he seeks.  Plaintiff has failed to allege facts that would demonstrate that he lacks an adequate remedy at law, which is the threshold issue for an accounting.  Plaintiff has also failed to allege facts that would demonstrate a breach of fiduciary duty, a need for discovery, fraud, or complex mutual accounts.  His claim for an accounting cannot move forward without one of those conditions.  Therefore, because of these pleading deficiencies, the Court should dismiss Plaintiff's Complaint for failure to state a claim pursuant to 735 ILCS 5/2-615.

WHEREFORE, Defendant respectfully prays that this Court dismiss Plaintiff's Complaint for failure to state a claim and enter whatever further relief the Court deems just and appropriate.

Dated:  February 8, 2021                                Respectfully submitted,

                                                                       JOHN F. MCKINNEY

                                                    By:     /s/ Brian P. O'Meara_____
                                                                One of Defendant McKinney's Attorneys

Kevin M. Forde
Brian P. O'Meara
Forde & O'Meara LLP – #64371
111 West Washington Street, Suite 1100
Chicago, IL  60602
(312) 641-1441
kforde@fordellp.com
bomeara@fordellp.com

FILED DATE: 2/8/2021 5:00 PM   2020CH06382

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he served DEFENDANT JOHN F. MCKINNEY'S SECTION 2-615 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM on counsel of record by email, via Odyssey eFileIL on the 8th day of February, 2021:

Mark T. Lavery, Esq.
8926 N Greenwood Ave.
Niles, IL 60714
312-792-9533
laverylawyer@gmail.com

/s/ Brian P. O'Meara

9

FILED DATE: 2/8/2021 5:00 PM   2020CH06382

# Exhibit A

FILED
10/20/2020 4:23 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH06382

10845916

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

CHARLES PORTIS,                    )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )
                                   )        2020CH06382
JOHN F. MCKINNEY,                  )
                                   )
        Defendant.                 )
                                   )

## COMPLAINT FOR EQUITABLE ACCOUNTING

Now comes, CHARLES PORTIS, by and through his undersigned counsel, Mark

T. Lavery, and as his Complaint for Equitable Accounting states as follows:

1.      Plaintiff, CHARLES PORTIS ("Portis") is a citizen of the State of Illinois

and is an Illinois licensed Managing Broker and a real estate developer.

2.      Defendant, JOHN F. McKINNEY ("Jack McKinney") is a citizen of the

State of Illinois and is Vice Chairman of Cushman & Wakefield and a real estate

developer.

3.      Portis and McKinney formed a partnership to develop real estate, or

alternatively a joint venture.

4.      McKinney recruited Portis to his company, J.F.McKinney & Associates,

in 1999. Portis was challenged with building for McKinney a successful suburban

development and leasing business, as McKinney, though in business for ten years by

then, had had no success in the Chicago suburbs.

5.      In 2004, Charles Portis took Jack McKinney to dinner at the Park Grill.

6.      McKinney thanked Portis for all his years of hard unpaid development

work to date and then proposed to Portis that McKinney will help make developments

FILED DATE: 10/26/2020 6:03 PM 2020CH06382

happen and Portis will always enjoy a piece of McKinney's upside, whether or not Portis puts money into a project. The discussion summed up and confirmed similar discussions that Portis and McKinney had had over the prior five years, as Portis had received no compensation for his development work.

7.      McKinney and Portis formed a partnership in 2004 at this dinner to work on real estate development projects.

8.      In 2005, McKinney and KZF, the partner Portis had found to construct and be 50% owner, formed Riverpark Partners LLC, co owned by McKinney@Riverpark and KZF@Riverpark.  McKinney promised Portis a share of his profits from McKinney@Riverpark's success.

9.      McKinney and Portis ultimately worked on four real estate development projects together as part of this partnership.  Each project was a separate joint venture.

10.      At the 2004 dinner, McKinney proposed to Portis two ways to participate: 1. Put in no capital and receive 25% of McKinney's upside after return of capital  or 2. Put in $30,000 (about 15% of the $275K McKinney would initially post) and receive 33% of McKinney's upside after return of both parties' capital.

11.      Portis opted for the second choice and provided McKinney with a check for $30,000 to McKinney@Riverpark.

12.      McKinney never cashed the check.

13.      After McKinney had refused to cash the check for more than a year, Portis told McKinney he would take back the check and assume that he had the "25% of upside agreement."

14.     Portis would be contributing services ("sweat equity") to the project rather than cash or property.

15.     McKinney verbally confirmed the arrangement after Portis took back the check and confirmed the "25% upside" but nothing was formalized in writing at that time.

16.     In 2010, Portis and McKinney – on demand of Portis – put the terms of the partnership in writing. See Exhibit A.

17.     The agreement states in relevant part:

Pursuant to our discussion, this letter will reconfirm our oral contract that you are entitled to a 25% share (assuming no dilution, recapture or additional cash required from me which would modify that situation in any aggregate net positive cash flow income generated whether by rent, refinancing, proceeds greater than the equity, or sale as more appropriately addressed below. The proceeds will ignore the cost of any tax losses, etc. personal guarantees (except any funds spent by me enhancing or paying back any guarantees). This agreement continues subsequent to my death, your death, until my ownership position has expired. RiverPark-Techny - I believe my equity infusion was $385,000 (which will need to be verified) and we have received $90,000 of phantom income to date no real cash flow has been received but I personally paid 35% income taxes (32% - Federal and 3% Illinois) out of my pocket. **Thus, whenever we receive net cash a described above that exceeds my total input of capital and the payment, you shall receive 25% of that cash income.**

18.     The RiverPark project has been fully sold/leased for the last decade and has been profitable since at least 2014.

19.     By December 2017, Portis was working to secure McKinney's return of the capital that McKinney invested in the RiverPark project.  Portis knew a significant amount of capital was held in the Riverpark Partners account, allowing McKinney to claim he had not yet gotten his contribution returned.

FILED DATE: 10/26/2020 6:03 PM   2020CH06382

20.     At Portis' urging, McKinney and RiverPark investor Steve Friedman of KZF met and agreed to distribute roughly $250,000 to each side (about half of net capital at that point) in late 2017.

21.     After that meeting, Portis told McKinney, "Jack, I want you to get your capital back so I can begin realizing my 25% upside."

22.     Under his breath, McKinney muttered "Yeah, 25%, maybe, but after I get some rate of return."

23.     There had never been any agreement to provide McKinney with a rate of return.  The agreement had always been for a "Zero" rate of return. Had McKinney, a sophisticated real estate developer, wanted a rate of return, he could have easily inserted it into the 2010 document memorializing the agreement that was already six years old.

24.     In June of 2018, Portis approached McKinney again. Portis stated, "Hey Jack, you had mentioned something a while back about a rate of return on Northbrook [RiverPark], which was not our deal. Have you thought about it anymore?"

25.     McKinney stated, "Thought about what?"

26.     Portis said, "About what that rate of return should be."

27.     McKinney stated, "10 per cent, 10%. That's what I want, that's what Leaf Mountain gets. After I get 10% we'll see what's left for you."

28.     Portis communicated to McKinney that there is no rate of return in the agreement. He also reminded McKinney that to conflate his ownership interest, "sweat equity," with that of an investment partner who contributes not effort but cash and therefore receives a preferred return, is simply outlandish.

FILED DATE: 10/26/2020 6:03 PM 2020CH06382

29. In a meeting on May 22, 2019, McKinney admitted to Portis that the December 2010 agreement was valid and that he was not in fact entitled to a rate of return.

30. Portis has asked McKinney for his share of his profits from RiverPark Partners/McKinney@Riverpark repeatedly.

31. McKinney has provided nothing to Portis.

32. McKinney has not provided an accounting to Portis.

33. Portis is entitled to an equitable accounting.

34. The accounting involves complex accounts of debt and equity and involves valuation of real estate to determine the dollar value of McKinney's profits to date.

35. Portis has no adequate remedy at law because the matter involves a dispute over the proper accounting of profits from the partnership.

WHEREFORE, Charles Portis respectfully requests that this Court order John F. McKinney to produce an accounting to Charles Portis.

Respectfully Submitted,
Plaintiff Charlie Portis

/s/ Mark T. Lavery
Plaintiff's Attorney

Mark T. Lavery, Esq.
8926 N Greenwood Ave.
Niles, IL 60714
312-792-9533
laverylawyer@gmail.com

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| CHARLES PORTIS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 20 CH 6382 |
| | ) | |
| JOHN F. MCKINNEY | ) | Judge Alison C. Conlon |
| | ) | |
| Defendant. | ) | |

**ORDER**

This case coming before the Court on February 17, 2021, for status and Defendant's 2-

615 motion to dismiss, the parties given due notice, and the Court being fully advised,

IT IS HEREBY ORDERED THAT:

1.    Plaintiff shall file his response to the motion to dismiss on or before March 17, 2021.

2.    Defendant shall file his reply in support of the motion to dismiss on or before March

      31, 2021.

3.    Clerk status set for April 5, 2021 at 9:15 a.m.  Defendant to provide courtesy copies

      of all briefs at that time.  No appearance necessary.

Judge Alison C. Conlon

ENTERED:

FEB 17 2021



Circuit Court – 2140

_____
Judge Alison C. Conlon                Judge's No.

Forde & O'Meara LLP
Brian P. O'Meara
111 West Washington Street, Suite 1100
Chicago, IL 60602
(312) 641-1441
Firm No. 64371

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
3/17/2021 6:24 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020CH06382

12616321

FILED DATE: 3/17/2021 6:24 PM    2020CH06382

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| CHARLES PORTIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20 CH 6382 |
| v. | ) | |
| | ) | Judge Allison C. Conlon |
| JOHN F. MCKINNEY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANT JOHN F. MCKINNEY'S SECTION 2-615 MOTION TO DIMISS FOR FAILURE TO STATE A CLAIM

### INTRODUCTION

This case presents the classic scenario for an equitable accounting. A relationship between joint venturers in a commercial real estate development project breaks down. The partners disagree on the proper distributions of capital from the project and one sues for an accounting. Courts have faced this dilemma many times and utilized the equitable accounting remedy. See *Burtell v. First Charter Service Corp.*, 76 Ill.2d 427 (1979); *Kennedy v. Miller*, 221 Ill.App.3d 513 (1991); and *Polikoff v. Levy*, 132 Ill. App. 2d 492 (1971).

But Defendant moves to dismiss the Complaint under Section 2-615. Such a motion directed at a complaint for an accounting is meritless, misguided and misunderstands the equitable remedy of accounting. Accounting is an equitable proceeding distinct from litigation in cases at law. There are two hearings in an accounting case. The first hearing determines whether Plaintiff is entitled to an accounting. *Kennedy v. Miller*, 221 Ill.App.3d at 521. If Plaintiff can prove he has a fiduciary relationship with Defendant then he is entitled to an accounting. *Id.* The Court

FILED DATE: 3/17/2021 6:24 PM   2020CH06382

will then order production of all original financial source documents and order Defendant to account for the gain or loss from the project. *Id.* The next hearing determines what money is owed to Plaintiff from Defendant. Plaintiff may seek credits against the accounting or object to Plaintiff's accounting and present his own accounting and seek that amount in a judgment. *Id.* Plaintiff has alleged sufficient facts to proceed with an initial hearing to determine whether Plaintiff is entitled to an accounting based upon the fiduciary relationship created by the joint venture.

## ARGUMENT

### A. The parties are in a fiduciary relationship

In order to move forward with the first accounting hearing, Plaintiff only need allege he was in a fiduciary relationship with Defendant. *People ex rel. Hartigan v. Candy Club*, 149 Ill.App. 498, 501 (1986) citing *Mayr v. Nelson Chesman & Co.*, 195 Ill. App. 587, 602 (1915)(Courts of equity can compel accounting where fiduciary relations exist). A fiduciary need not allege "no adequate remedy at law".[1] *Id.*

Defendant made no real effort to dispute that the parties are involved in a joint venture. Defendant concedes that the dispute at issue arises "from an alleged partnership with McKinney." See Motion to Dismiss at p. 1. Defendant's only argument in response to these allegations is, "Plaintiff has not alleged the existence of a fiduciary relationship

---

[1] Plaintiff does however allege "no adequate remedy at law". Comp. at ¶ 35. In his Motion, Defendant has failed to identify the legal cause of action that he believes provides Plaintiff with a legal remedy to determine partnership income in this complex development. Plaintiff is unable to respond further to this argument without such identification. The case cited by Defendant, *Noesges v. Servicemaster*, 233 Ill.App.3d 158, 161 (1992), does not hold no adequate remedy at law is "a necessity for seeking the equitable remedy of an accounting." That line of the opinion merely summarizes an argument of a party that was rejected in the case – this was not the opinion of the Court. The law in Illinois is clear that even if the plaintiff has a remedy at law, that legal remedy will not preclude a suit for equitable accounting where a fiduciary relationship exists between the parties. See *Kerasotes v. Estate of Kerasotes*, 238 Ill. App. 1020, 1030-1031 (1992).

FILED DATE: 3/17/2021 6:24 PM    2020CH06382

between Plaintiff and Defendant, and the Complaint does not frame Defendant's actions as the breach of a fiduciary duty."

On one hand Defendant concedes the existence of a partnership but on the other hand makes the meritless argument that no fiduciary relationship exists. Black letter law in Illinois is that a fiduciary relationship exists between members of a joint venture. *Burtell v. First Charter Service Corp.*, 76 Ill.2d 427, 438 (1979).

So the real issue presented by this motion is whether Plaintiff has alleged sufficient facts to establish a fiduciary relationship. Defendant has indicated in a footnote that he disputes the facts of the Complaint. The proper way to respond is present evidence of the disputed facts at the first stage hearing. The Section 2-615 approach is without merit.

Defendant made no effort to analyze why the facts of the Complaint – taken as true – do not establish a joint venture. Defendants failed to cite to any case or even factually address how the parties' participation in the RiverPark real estate development joint venture did not create a fiduciary duty between them.

> "A joint venture is an association of two or more persons to carry out a single enterprise for profit. The elements to be considered in determining the parties' intent are: an agreement, express or implied, to carry on an enterprise; a demonstration of intent by the parties to be joint venturers; a joint interest, as reflected in the contribution of property, finances, effort, skill or knowledge by each party to the joint venture; a measure of proprietorship or joint control over the enterprise; and a provision for sharing of profits and losses. A formal agreement is not essential to establish a joint venture. Rather, the existence of a joint venture may be inferred from facts and circumstances demonstrating that the parties, in fact, undertook a joint enterprise."

*Fitchie v. Yurko*, 212 Ill. App. 3d 216, 226–27 (1991)(citations omitted)

Plaintiff alleges that a joint venture existed between the parties. But Plaintiff went far beyond that conclusory allegation and set forth ultimate facts that tell the story of the

FILED DATE: 3/17/2021 6:24 PM 2020CH06382

parties' joint venture on the RiverPark project. The parties met at the Park Grill in 2004 to discuss a partnership and work on joint ventures. Comp. at ¶¶ 5-6. The terms of the joint venture, including a written agreement between the parties, and the course of dealing between the partners in the joint venture over the years were specifically alleged in the Complaint. *Id.* at ¶¶ 9-32. These facts and circumstances demonstrate that Plaintiff and Defendant undertook the RiverPark project as a joint enterprise.

The meeting back in 2004 and the subsequent events involving the RiverPark project up until the present day evidence that (1) the RiverPark project was a single enterprise; (2) both parties intended to work together on the RiverPark venture; (3) there was a written agreement relating to the RiverPark joint venture; (4) both parties had a joint interest as reflected by Defendant's contribution of capital and Plaintiff's contribution of effort, skill and knowledge to develop RiverPark; (5) both parties had a measure of proprietorship - Portis was responsible for contributing services to the RiverPark enterprise; and (6) the parties had an agreement sharing gain or loss - Portis risked losing the entire value of the contribution for his services and receiving nothing in return if the joint venture did not return income. *Id.* Plaintiff has clearly alleged ultimate facts that meet the required elements for a joint venture under Illinois law. *Fitchie v. Yurko*, 212 Ill. App. 3d at 226–27.

### B. Plaintiff has established that an accounting is proper because the case involves multiple accounts of a complex nature

Defendant also concedes that an accounting is proper when a case deals with multiple accounts of a complex nature. Motion to Dismiss at p. 7. There are not only multiple accounts at issue in this project but also multiple parcels of land some which have been sold and others that have been leased. Complaint at ¶¶ 8-30. There are

FILED DATE: 3/17/2021 6:24 PM   2020CH06382

complex accounting, appraisal and valuation issues involved in this commercial real estate development. The project involves multiple accounts receiving rent and other accounts making payments for financing, maintenance and operations.  Revenue allocation may also be dependent upon real estate appraisal and equity valuation. Complex issues such as the interpretation of cash income, dilution, recapture and aggregate net positive cashflow are involved. Complaint at ¶ 17. If real estate development accounting is not considered "complex" it is difficult to imagine what type of accounting would be considered "complex" enough to justify an accounting.

Defendant claims that the agreement involves "a simple percentage of **net profits** on a single real estate development project that had only two investors." Motion at p. 7. The term "**net profits**" is not in the RiverPark agreement and does not appear in the Complaint. Plaintiff is entitled to profits in the form of "**cash income**" from the project. Complaint at ¶ 17.

This disagreement – apparent in Defendant's Motion – between "cash income" and "net profits" demonstrates the complexity involved in this project. Motion at p. 7. Defendant claims the formula is simple but fails to provide the answer to that undefined equation. The Merriam-Webster Dictionary defines "complex" as "hard to separate, analyze, or solve". https://www.merriam-webster.com/dictionary/complex. The financial issues in this case meet that definition of "complex".

Defendant cites to *Mann v. Kemper Financial Companies, Inc*. 247 Ill.App.3d 966 (1992) for support. But this case harms Defendant's position. The Appellate Court ruled that the Plaintiff was entitled to an accounting and there is no substantive discussion about what types of complex multiple accounts give rise to an accounting in *Mann*. The

FILED DATE: 3/17/2021 6:24 PM   2020CH06382

investment funds at issue in *Mann* were not as complex as the accounts at issue in this case, but the Appellate Court held an accounting claim was proper there.

A seminal Illinois case on accounting, that has been widely cited by other Courts, is *Polikoff v. Levy*, 132 Ill. App. 2d 492, 499 (1971). That case dealt with a dispute between partners/co-venturers in a real estate venture. The case holds that such a party seeking an accounting is entitled to know the "true status" of assets by examining "all of the detailed financial transactions of the business" *Id.* The very nature of a commercial real estate development is complex. Defendant cites no caselaw to the contrary. The Illinois Appellate Court recognized the necessity for an accounting in another real estate venture very similar to this case. In *Kennedy v. Miller*, 221 Ill.App.3d at 521, one partner contributed services and the other partner contributed capital. A dispute over income developed. The partner that contributed capital denied a fiduciary relationship existed. A hearing determined that the two persons were in a joint venture and thus an accounting was proper. The same result should occur in this case.

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss.

Respectfully Submitted,
Plaintiff Charlie Portis

/s/ Mark T. Lavery
Plaintiff's Attorney

Mark T. Lavery, Esq.
15774 LaGrange Ave.
Orland Park, Illinois
708-274-6803
laverylawyer@gmail.com

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
3/31/2021 2:32 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020CH06382

12786365

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| CHARLES PORTIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 20 CH 6382 |
| | ) | |
| JOHN F. MCKINNEY, | ) | Judge Alison C. Conlon |
| | ) | |
| Defendant. | ) | |

## DEFENDANT JOHN F. MCKINNEY'S REPLY IN SUPPORT OF HIS SECTION 2-615 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendant John F. McKinney ("Defendant" or "McKinney"), by and through his attorneys, Forde & O'Meara LLP, hereby submits this reply in support of his Motion to Dismiss the Complaint for Equitable Accounting (the "Complaint") of Plaintiff Charles Portis ("Plaintiff" or "Portis") for Failure to State a Claim, pursuant to Section 2-615 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-615, and states as follows:

## INTRODUCTION

In his response, Plaintiff fails to demonstrate that his Complaint satisfies Illinois's fact-pleading requirements to state a claim for an accounting. Specifically, Plaintiff has failed to sufficiently plead that he lacks an adequate remedy at law, and he has failed to sufficiently plead that this case concerns a fiduciary relationship, a need for discovery, fraud, or complex mutual accounts.

In an effort to overcome these deficiencies, Plaintiff recasts the standard of review for a section 2-615 motion to dismiss. The well-rooted standard of review, which Defendant identifies in his motion, is that, for the purposes of a motion to dismiss, a court must accept as true all well-pleaded facts in a plaintiff's complaint. Plaintiff, however, contorts the standard of review and

repeatedly characterizes Defendant as conceding points on the merits of the case. (*See*, *e.g.*, Resp. at 2 ("Defendant concedes that the dispute at issue arises 'from an alleged partnership with McKinney.'"), and 3 ("On one hand Defendant concedes the existence of a partnership . . . .").) To the contrary, Defendant has not conceded that any of the alleged facts in Plaintiff's Complaint are true or that Plaintiff is entitled to relief, and Defendant expressly makes this point his motion. (*See* Motion at 2 n. 1 ("While McKinney disputes many of Portis' factual allegations, they are to be accepted as true solely for purposes of this motion to dismiss.").) Accordingly, Plaintiff's attempt to inject a new standard of review and posit concessions where there are none is improper, and it further demonstrates his inability to address Defendant's arguments head on.

Furthermore, after Defendant moved to dismiss Plaintiff's threadbare Complaint, Plaintiff filed a separate complaint against Defendant (and Plaintiff's former employer) in the Law Division of the Circuit Court of Cook County for intentional infliction of emotional distress. Plaintiff's complaint in the new case is as deficient as his Complaint in this case. Nothing prevented Plaintiff from bringing both claims in the same lawsuit, which would have been more efficient. Indeed, Plaintiff's tactic of filing *seriatim* lawsuits unnecessarily imposes upon the time and resources of two Judges to resolve his claims. Regardless, as demonstrated below, Plaintiff's lawsuit before this Court fails to state a claim and should be dismissed.

## <u>ARGUMENT</u>

### I. **Plaintiff Fundamentally Misunderstands the Standard of Review.**

In his response, Plaintiff repeatedly contends that Defendant has conceded the facts alleged in Plaintiff's Complaint. (*See* Resp. at 2–4.) Plaintiff fundamentally misunderstands the standard of review for a section 2-615 motion to dismiss. While Defendant disputes Plaintiff's factual allegations (*see* Mot. at 2 n.1), he of course sets forth the proper standard of review for a

FILED DATE: 3/31/2021 2:32 PM    2020CH06382

section 2-615 motion, *i.e.*, that the Court must accept as true—*solely* for the purposes of a motion to dismiss—the well-pleaded facts in Plaintiff's Complaint. *See, e.g.*, *Phillip I. Mappa Interests, Ltd. v. Kendle* ("*Mappa*"), 196 Ill. App. 3d 703, 708 (1st Dist. 1990). Acknowledging that standard of review does not concede the truth of Plaintiff's allegations and Defendant's motion expressly provides that Defendant makes no such concessions.

Plaintiff also ignores a key aspect of the standard of review: that the Court only accepts as true well-pleaded facts—not conclusory assertions—for the purposes of a motion to dismiss. *See id.* at 707–08. Even construing the facts in Plaintiff's favor, the Court cannot accept a legal conclusion, such as the existence of a contract or a partnership, without sufficient facts to support that conclusion. *See, e.g.*, *Talbert v. Home Sav. Bank of Am., F.A.*, 265 Ill. App. 3d 376, 380 (1st Dist. 1994). Therefore, a complaint fails to state a claim "if it does not contain factual allegations in support of every element of the particular cause of action." *Mappa*, 196 Ill. App. at 708. As described below, and in Defendant's motion, Plaintiff has failed to allege facts in support of the elements of an accounting.

**II. Plaintiff Has Failed to State a Claim for an Accounting.**

**A. A Claim for an Accounting Can Be Dismissed under 2-615.**

Plaintiff seems to assert that a claim for an accounting is a unique claim that the Court cannot address on a section 2-615 motion. (*See* Resp. at 1–2.) That is not the case. Like any other claim, a plaintiff must plead facts that support every element of a claim for accounting. If a plaintiff fails to do so, a defendant may move to dismiss that claim for an accounting pursuant to section 2-615. *See, e.g.*, *Citizen's Bank-Ill., N.A. v. Am. Nat'l Bank & Tr. Co.*, 326 Ill. App. 3d 822, 823 (1st Dist. 2001) (affirming the dismissal pursuant to section 2-615 of an accounting claim for failure to state a claim); *Chi. City Bank & Tr. Co. v. Lesman*, 186 Ill. App. 3d 697,

FILED DATE: 3/31/2021 2:32 PM    2020CH06382

FILED DATE: 3/31/2021 2:32 PM   2020CH06382

702–03 (1st Dist. 1989) (same); *Nelson v. Warnke*, 122 Ill. App. 3d 381, 382–83 (1st Dist. 1984) (affirming the dismissal of an accounting complaint on both section 2-615 and section 2-619 grounds). Plaintiff misses the point by giving a lengthy description of the process for adjudicating a claim for an accounting. (*See* Resp. at 1–2.) But the cases that Plaintiff cites concern the process for resolving a claim for an accounting *on the merits*. *See, e.g.*, *Kennedy v. Miller*, 221 Ill. App. 3d 513, 521 (2d Dist. 1991) (reviewing a judgment entered after a bench trial). That process may be relevant in this case if Plaintiff's Complaint survives Defendant's motion to dismiss, but it is not germane to the instant motion.

### B. Plaintiff Has Failed to Sufficiently Plead the Absence of an Adequate Remedy at Law.

Plaintiff asserts that there is no requirement that a party seeking an accounting demonstrate that he lacks an adequate remedy at law. But as Defendant established in his motion, a plaintiff seeking an accounting "must allege the absence of an adequate remedy at law" as a gateway requirement. *Mann v. Kemper Fin. Cos.*, 247 Ill. App. 3d 966, 980 (1st Dist. 1992). Plaintiff's cited authority makes the same point. *See, e.g.*, *Kennedy*, 221 Ill. App. 3d at 520 ("The plaintiff must show that he has no adequate legal remedy . . . ."). This should come as no surprise: for suits in equity in general, a gateway requirement is demonstrating the lack of an adequate remedy at law.[1] *See Bass v. S. Cook Cty. Mosquito Abatement Dist.*, 236 Ill. App. 3d

---

[1] To the extent that there is an exception from this requirement for cases in which the plaintiff has alleged a breach of fiduciary duty, Plaintiff has still failed to state a claim for two reasons. *See People ex rel. Hartigan v. Candy Club*, 149 Ill. App. 3d 498, 501 (1st Dist. 1986). The first is that Plaintiff has failed to plausibly allege facts that show the existence of a fiduciary relationship between himself and Defendant. And the second is that, to the extent Plaintiff relies on a second theory to support an accounting—*i.e.*, the existence of complex mutual accounts—he has failed to plausibly allege either the lack of an adequate remedy at law or the existence of complex mutual accounts. *See infra* at 7-8.

466, 467–68 (1st Dist. 1992) ("It is also a well-settled rule that equity will not assume jurisdiction to grant relief where an adequate remedy at law exists.").

Furthermore, Plaintiff appears to believe that *Defendant* bears the burden of establishing that Plaintiff has an adequate remedy at law. (*See* Mot. at 2 n.1 ("Defendant has failed to identify the legal cause of action that he believes provides Plaintiff with a legal remedy . . . . Plaintiff is unable to respond further to this argument without such identification.").) It is, in fact, Plaintiff who has the burden of pleading facts in support of his conclusory allegation that he lacks an adequate remedy at law—an element of his claim for an accounting. Plaintiff has not carried his burden. As shown in Defendant's motion, Plaintiff has pleaded no facts to support the conclusion that he lacks an adequate remedy through, for example, contract law or partnership law. Based on the allegations in his Complaint, therefore, Plaintiff has failed to sufficiently plead the lack of an adequate remedy at law.

### C. Plaintiff Has Failed to Sufficiently Plead Any One of the Additional Conditions Necessary for an Accounting.

In addition to pleading the lack of an adequate remedy at law, Plaintiff must also allege one of the following: "(1) a breach of a fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature." *Mann*, 247 Ill. App. 3d at 980 (quoting *Hartigan*, 149 Ill. Ap. 3d at 501). Plaintiff makes no attempt to argue in his response that he has pleaded either the second or third condition, *i.e.*, a need for discovery or fraud, and no facts in the Complaint would support either argument. Plaintiff's only arguments concern the first and fourth conditions, *i.e.*, fiduciary duties and the existence of complex mutual accounts, which are addressed below.

Plaintiff's first argument is that Plaintiff and Defendant entered into a partnership or joint venture regarding the RiverPark real estate development project ("RiverPark project"). The

FILED DATE: 3/31/2021 2:32 PM   2020CH06382

FILED DATE: 3/31/2021 2:32 PM    2020CH06382

Complaint, however, contains only a conclusory assertion that parties entered into a partnership or joint venture (Compl. ¶ 3.)  To enter a partnership, two or more persons must agree to carry out an ongoing business enterprise jointly and to share in its profits and losses.  *See Davis v. Loftus*, 334 Ill. App. 3d 761, 770 (1st Dist. 2002) (holding that defendants had not joined a partnership because there was no agreement that they would share in the partnership's profits and losses).  To enter a joint venture, two or more persons must agree to carry out a single business enterprise jointly and to share in its profits and losses.  *See Baker v. Walker*, 173 Ill. App. 3d 836, 839 (1st Dist. 1988) (holding that two persons had not formed a joint venture because they had not agreed to share profits and losses).

Here, there are no alleged facts from which the Court could conclude, even viewing the allegations in favor of Plaintiff, that the parties formed either a partnership or a joint venture. Assuming the truth of those allegations, Plaintiff and Defendant reached an agreement by which Plaintiff would receive 25% of Defendant's net cash income on the RiverPark project, after the return of Defendant's capital.  (*See* Compl. ¶ 17; *see also* Resp. at 5.)  As Plaintiff notes repeatedly in his response, the parties did *not* agree that Plaintiff would share in the profits and losses from the RiverPark project, as is required for both a partnership and a joint venture.  *See* Resp. at 5; *Davis*, 334 Ill. App. 3d at 770; *Baker*, 173 Ill. App. 3d at 839.  The writing that Plaintiff references in paragraph 17 of his Complaint reaffirms this point.  That writing by Defendant referred to an "oral contract" concerning a "25% share" of "any aggregate net positive cash flow income" from the RiverPark project.  (Compl. ¶ 17.)  But an agreement by one person to give to another a share of the cash income from a business enterprise is not an agreement to share in profits and losses.  Because there is no sharing of profits and losses, the alleged agreement is best understood through the framework of an employment relationship or contract,

FILED DATE: 3/31/2021 2:32 PM   2020CH06382

not through partnership or fiduciary law. Thus, even construing the allegations in Plaintiff's favor, the Complaint does not allege that the parties intended to enter or did enter an agreement to form a partnership or joint venture.

The Complaint also fails to allege facts that show complex mutual accounts exist between the parties. As established in Defendant's motion, and here, Plaintiff has failed to plead facts to support the allegation that the parties' alleged accounts are so complex that the equitable remedy of an accounting is necessary. Plaintiff alleges that Defendant owes him 25% of the net cash income from the RiverPark project, after the return of Defendant's capital investment in the project. Accepting the allegations in the Complaint as true, there would be only three straightforward factual questions to resolve if the Court ever adjudicated Plaintiff's claim for an accounting on the merits:

(1)    What was Defendant's capital investment in the RiverPark project?

(2)    What was Defendant's net cash income—if any—from the Riverpark project?

(3)    How much of the net cash income—if any—has Defendant provided to Plaintiff to date?

Here, in a case involving a single real estate development, those questions are not so complex that an accounting—as opposed to an ordinary claim for damages—is necessary. [2]

Moreover, Plaintiff has not pleaded specific facts suggesting that Defendant has had any net cash income from the RiverPark project. Thus, even assuming that Defendant is obligated to share any such cash income with Plaintiff, it may turn out that Defendant has has had no net cash

---

[2] The cases that Plaintiff has cited in support of its Complaint are unpersuasive. In *Polikoff v. Levy*, the court ordered an accounting to accompany an order to the effect that a joint venture partner had caused the wrongful dissolution of a joint venture by transferring joint venture property to a corporation without authorization—a far cry from the facts in Plaintiff's Complaint. 132 Ill. App. 2d 492, 499 (1st Dist. 1971). *Kennedy v. Miller*, meanwhile, concerned how much one party was owed in profits, not whether an accounting was appropriate. 221 Ill. App. 3d at 522–23.

FILED DATE: 3/31/2021 2:32 PM   2020CH06382

income from the RiverPark project to share with Plaintiff.  For those reasons, Plaintiff has failed to plead facts to support his conclusory allegation that complex mutual accounts exist between the parties.

## <u>CONCLUSION</u>

As shown in Defendant's motion to dismiss and in this reply, under the proper standard of review, Plaintiff's Complaint fails both the legal and factual requirements for pleading a claim for an accounting.  He does not sufficiently plead the threshold requirement of an inadequate remedy at law.  He further fails to allege specific facts that demonstrate a fiduciary relationship or the existence of complex accounts, which are additional conditions required for a claim for an accounting.

WHEREFORE, Defendant respectfully prays that this Court dismiss Plaintiff's Complaint for failure to state a claim and enter whatever further relief the Court deems just and appropriate.

Dated:  March 31, 2021

Respectfully submitted,

JOHN F. MCKINNEY

By:  /s/ Brian P. O'Meara
One of Defendant McKinney's Attorneys

Kevin M. Forde
Brian P. O'Meara
Forde & O'Meara LLP – #64371
111 West Washington Street, Suite 1100
Chicago, IL  60602
(312) 641-1441
kforde@kfordellp.com
bomeara@fordellp.com

8

FILED DATE: 3/31/2021 2:32 PM   2020CH06382

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he served DEFENDANT JOHN F. MCKINNEY'S REPLY IN SUPPORT OF HIS SECTION 2-615 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM on counsel of record by email, via Odyssey eFileIL on the 31st day of March, 2021:

Mark T. Lavery, Esq.
8926 N Greenwood Ave.
Niles, IL 60714
312-792-9533
laverylawyer@gmail.com

/s/ Brian P. O'Meara

9

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

CHARLES PORTIS,               )

                           )

        Plaintiff,            )

                           )

        vs.                 )        No. 20 CH 6382

                           )

JOHN F. MCKINNEY,       )        Judge Alison C. Conlon

                           )

        Defendant.      )

## AGREED ORDER

This case coming before the Court on an Agreed Order,

IT IS HEREBY ORDERED THAT:

1.      The hearing on Defendant's Motion to Dismiss is set for May 26, 2021 at 10:30 a.m.

2.      Judge Conlon's Zoom information is as follows:

      Zoom Meeting ID Number: 974 5431 3798

      Password: 501494

              ENTERED:



Judge Alison C. Conlon
APR 08 2021
Circuit Court – 2140

—————————————————————————————————

Judge Alison C. Conlon        Judge's No.

Forde & O'Meara LLP
Brian P. O'Meara
111 West Washington Street, Suite 1100
Chicago, IL 60602
(312) 641-1441
Firm No. 64371



## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

CHARLES PORTIS,            )
                              )
      Plaintiff,          )
                              )
      vs.                   )       No. 20 CH 6382
                              )
JOHN F. MCKINNEY,      )       Judge Alison C. Conlon
                              )
      Defendant.      )

## ORDER

     This matter coming to be heard for oral argument on May 26, 2021, after full briefing, on Defendant John F. McKinney's Section 2-615 Motion to Dismiss for Failure to State a Claim, the parties given due notice, and the Court being fully advised in the premises via Zoom with a court reporter in attendance,

     IT IS HEREBY ORDERED THAT:

1.     For the reasons stated on the record, with the transcript of the proceedings incorporated herein, Defendant's Section 2-615 Motion to Dismiss for Failure to State a Claim is granted and Plaintiff's complaint is dismissed without prejudice.

2.     Plaintiff is granted 28 days to file an amended complaint, on or before June 23, 2021.

3.     Defendant is granted 28 days thereafter to answer or otherwise plead to the amended complaint, on or before July 21, 2021.

4.     Court status set for August 3, 2021 at 9:30 a.m. via Zoom.

     Judge Conlon's Zoom information is as follows:

     Zoom Meeting ID Number: 974 5431 3798
     Password: 501494

ENTERED:  Judge Alison C. Conlon
JUN 21 2021
Circuit Court – 2140

_____  _____
Judge Alison C. Conlon                Judge's No.

Forde & O'Meara LLP - #64371
Brian P. O'Meara
111 West Washington Street, Suite 1100
Chicago, IL 60602
(312) 641-1441

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

CHARLES PORTIS,                                )
                                               )
      Plaintiff,                      )
                                               )
      vs.                             )     No. 20 CH 6382
                                               )
JOHN F. MCKINNEY,                              )     Judge Alison C. Conlon
                                               )
      Defendant.                      )

## <u>AGREED ORDER</u>

      This matter coming to be heard on Plaintiff's request to extend the time to file an amended complaint,

      IT IS HEREBY ORDERED THAT:

1.     Plaintiff has leave to to file an amended complaint, on or before June 30, 2021.

2.     Defendant is granted 28 days thereafter to answer or otherwise plead to the amended complaint, on or before July 28, 2021.

3.     Court status set for August 3, 2021 at 9:30 a.m. via Zoom to stand.

      Judge Conlon's Zoom information is as follows:

      Zoom Meeting ID Number: 974 5431 3798
      Password: 501494

ENTERED:    Judge Alison C. Conlon
                         JUN 25 2021
                        Circuit Court – 2140

_____

Judge Alison C. Conlon          Judge's No.

Mark T. Lavery, Esq.
15774 S. LaGrange Rd.
Orland Park, IL 60462
708-274-6803



## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

CHARLES PORTIS,                    )
                              )
    Plaintiff,                    )
                              )
    vs.                    )        No. 20 CH 6382
                              )
JOHN F. MCKINNEY,                    )        Judge Alison C. Conlon
                              )
    Defendant.                    )

### AGREED ORDER

    This matter coming to be heard on Plaintiff's request to extend the time to file an amended complaint,

    IT IS HEREBY ORDERED THAT:

1.    Plaintiff has leave to to file an amended complaint, on or before July 14, 2021.

2.    Defendant is granted 28 days thereafter to answer or otherwise plead to the amended complaint, on or before August 11, 2021.

3.    Court status set for August 3, 2021 at 9:30 a.m. via Zoom to stand.

    Judge Conlon's Zoom information is as follows:

    Zoom Meeting ID Number: 974 5431 3798
    Password: 501494

ENTERED:

Judge Alison C. Conlon
JUL 08 2021
Circuit Court – 2140

_____    _____
Judge Alison C. Conlon                Judge's No.

Mark T. Lavery, Esq.
15774 S. LaGrange Rd.
Orland Park, IL 60462
708-274-6803



## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

CHARLES PORTIS,                    )
                                   )
    Plaintiff,              )
                                   )
    vs.                     )      No. 20 CH 6382
                                   )
JOHN F. MCKINNEY,                  )      Judge Alison C. Conlon
                                   )
    Defendant.              )

### AGREED ORDER

This matter coming to be heard on Plaintiff's request to extend the time to file an amended complaint,

IT IS HEREBY ORDERED THAT:

1.   Plaintiff has leave to to file an amended complaint, on or before July 19, 2021.

2.   Defendant is granted 28 days thereafter to answer or otherwise plead to the amended complaint, on or before August 16, 2021.

3.   Court status set for August 3, 2021 at 9:30 a.m. via Zoom to stand.

Judge Conlon's Zoom information is as follows:

Zoom Meeting ID Number: 974 5431 3798
Password: 501494

ENTERED:

Judge Alison C. Conlon
JUL 16 2021
Circuit Court – 2140

_____
Judge Alison C. Conlon        Judge's No.

Mark T. Lavery, Esq.
15774 S. LaGrange Rd.
Orland Park, IL 60462
708-274-6803

FILED
7/19/2021 5:09 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020CH06382

14098161

FILED DATE: 7/19/2021 5:09 PM   2020CH06382

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| CHARLES PORTIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 20 CH 6382 |
| | ) | |
| JOHN L. MCKINNEY | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**AMENDED COMPLAINT**

**INTRODUCTION**

1. This case is about an antisemitic and racist white businessman, known as John 'Jack' McKinney", ("Defendant"), who has failed to pay his share of a real estate development project known as RiverPark to Charles Portis, a Jewish man, in this County.

2. Plaintiff, Charles Portis ("Plaintiff"), is a non-white man of the Jewish "race" with adopted non-white Asian "race" children. He is a citizen of Illinois.

**FACTS**

3. Plaintiff and Defendant have a history of working together on real estate development projects.

4. But Defendant has exhibited overt and direct racism toward Plaintiff for years in the form of Anti-Semitic and Anti-Asian statements.

5. Plaintiff was aware that Defendant held a racial animus against him.

FILED DATE: 7/19/2021 5:09 PM   2020CH06382

6. Defendant made it clear that he had disdain for the adopted Asian children of Plaintiff and stated that Plaintiff did not have "enough lead in his pencil" to produce biological non-Asian children.

7. Defendant exposed Plaintiff to intimidation, public ridicule, bullying, humiliation and insult for having Asian children, even in front of other people.

8. These were not isolated incidents, Defendant regularly and frequently made Anti-Asian comments and comments to Plaintiff about his Asian children.

9. Plaintiff was aware that Defendant viewed himself as more powerful than non-whites and superior to non-whites.

10. Plaintiff endured years of racist abuse from Defendant in order to support his family.

11. Defendant used manipulation and techniques like gaslighting to keep Plaintiff helping Defendant on real estate business while abusing him as a non-white.

12. Defendant had communicated to Plaintiff for years that Jews, Asians and Blacks were inferior to whites through both his racist words and discriminatory actions in the form of preferential treatment of whites and decisions that disfavored non-whites.

13. Defendant's verbal conduct went beyond stray or isolated remarks and expressed a regular sense of superiority over Asians, Jews and Blacks for many years.

14. Defendant has made racist statements about Blacks.

15. Defendant made a derogatory comment in a business meeting with Portis about Blacks by using the term "black as Toby's ass".

FILED DATE: 7/19/2021 5:09 PM   2020CH06382

16. Toby is the slave name of the character Kunta Kinte from the Pulitzer Prize winning novel *Roots: The Saga of an American Family* by Alex Haley.

17. Defendant's use of the slave name "Toby" reveals a deep level of white supremacy within Defendant.

18. Defendant regularly made slurs about Asians.

19. Defendant regularly used the refrain "Hop to Hop Sing", which is a racist phrase referring to Hop Sing, a negative Hollywood stereotypical Asian character, similar to "Amos and Andy" for Blacks or "Tony the Greaser" for Mexicans.

20. Defendant has admitted to using the term "Hop Sing" and has acknowledged using Asian racial epithets in 2019.

21. Defendant has also regularly used the Anti-Asian epithet "gook" in front of Plaintiff.

22. Defendant was in the U.S. Marine Corps during the Vietnam War.

23. Defendant may have been indoctrinated into Anti-Asian bias and further racism while in the Marines.

24. As documented in *US Marines In Vietnam: The Defining Year - 1968* by Jack Shulimson, Lieutenant Colonel Leonard A. Blasiol, Charles R. Smith, Captain David A. Dawson and the U.S. Marine Corps History and Museums Division on p. 618, "While never condoned and often condemned by the Senior Marine Command, there emerged among some troops and perhaps some commanders what was called the 'mere gook rule'. For some Marines this permitted the killing of Vietnamese – regardless of age, sex or combatant status - because 'after all

FILED DATE: 7/19/2021 5:09 PM   2020CH06382

they are only gooks', a derogatory nickname for an Oriental that carried over from the Korean War."

25. The Vietnam War ended in 1973 but Defendant persisted in using that ugly and egregious epithet "gook" in front of Plaintiff, a man with Asian children, during this century and this decade.

26. Defendant regularly brought up Judaism and directed awkward comments referring to Jews or being Jewish at Plaintiff.

27. Plaintiff never witnessed Defendant bring up Christianity to anyone.

28. Defendant has pervasively made Anti-Semitic micro-aggressions toward Portis for years. For example, Defendant once used a micro-aggression directed at Plaintiff which was a snide "Happy Passover" remark when Defendant was angry at Plaintiff.

29. Defendant has been party to conversation where people under Defendant's control were referred to as "kike", "nigger" and "skirt".

30. Defendant's participation in this conversation is evidence of Defendant's deliberate indifference to racism in business dealings and to the racism of people within his control and influence.

31. Defendant's conduct and use of language demonstrate a pattern of pathological racism and bias against non-whites that has persisted in Defendant for years despite changes in society.

32. Defendant has also economically harmed both Jewish and Black people in business transactions which further evidences his bias, pathological racism, intentional racial discrimination and white supremacy.

FILED DATE: 7/19/2021 5:09 PM   2020CH06382

33. Plaintiff has never witnessed Defendant treat a white person in a business transaction in a discriminatorily negative manner in twenty years.

34. Defendant does not have a reputation for converting funds from whites.

35. Defendant does not have a reputation for failing to deliver full contractual benefits to whites.

36. But Defendant has had a history of rewarding or over-rewarding whites in business transactions but discriminating against non-whites, including Jews and Blacks.

37. Defendant prevented a Jewish employee under his control from participating in a specific lucrative Chicago downtown leasing opportunity.

38. Defendant has treated Jews unfairly in different real estate development projects.

39. A Jewish real estate developer involved with Defendant on the Riverpark Project recently stated that Defendant would not cooperate on a deal because Defendant does not, "want these fucking Jews to put one over on me."

40. Plaintiff made complaints about Defendant's racist Anti-Asian conduct.

41. In 2019, Defendant became aware of workplace complaints about his Anti-Asian conduct.

## COUNT I – 42 U.S.C. § 1981

42. Plaintiff reincorporates paragraphs 1-41 into Count I.

43. The statute, 42 U.S.C. § 1981, provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons

FILED DATE: 7/19/2021 5:09 PM   2020CH06382

and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

44. One of the main benefits enjoyed by whites is the ability to receive the full benefits of compensation.

45. In the United States, whites are the "dominant caste" of society.

46. Before the passage of Section 1981 of the Civil Rights Act of 1866, the United States had elements of overt white supremacy in the U.S. Constitution, laws that discriminated against non-whites and de facto customs, practices and norms that ensured white supremacy over non-whites in the United States.

47. Section 1981 of the Civil Rights Act of 1866 makes White Supremacist conduct unlawful.

48. As explained by author Isabel Wilkerson in *Caste: The Origins of our Discontents*, "[The] dominant caste lived under the illusion of an innate superiority over all other groups of humans, told themselves that the people they forced to work for up to eighteen hours, without the pay that anyone had a right to expect..."

49. White Supremacists have a history of not paying compensation to non-whites or fully performing contracts with non-whites both before the passage of Section 1981 and after.

50. In 1846, sailing the *Cambria* to Liverpool, Frederick Douglass was accosted by an incensed Georgian who shouted at the escaped slave turned orator: "I wish I had

FILED DATE: 7/19/2021 5:09 PM  2020CH06382

him in Savannah! We would use him up!" See *Frederick Douglass, Prophet of Freedom* by David W. Blight, p. 142.

51. Douglass escaped being thrown overboard that day, but as Wilkerson outlined in "Caste", the shadow and structure of caste embodied by Douglass' exchange that day are what Section 1981 of the 1866 Civil Rights Act was meant to address: a caste system based in White Supremacy: White Protestant at Top, Catholics (Irish and Italians) and others initially deemed not fully "White" below them, then Jews, then other non-white races culminating at bottom with a fully dehumanized dark-skinned person, one there to be "used up."

52. Wilkerson notes that slavery "left Africans firmly at the bottom… Americans are loath to talk about enslavement in part because what little we know about it goes against our perception of our country as a just and enlightened nation, a beacon of democracy for the world…. Slavery in this land was not merely an unfortunate thing that happened to black people. It was an American innovation, an American institution created by and for the benefit of the elites of the dominant caste and enforced by poorer members of the dominant caste who tied their lot to the caste system rather than to their consciences."

53. As Author Wilkinson explains, the system of slavery created a form of white supremacy that benefits white elites and was enforced by other whites including poor whites against non-whites.

54. To the White Supremacist, a Jewish person is a non-White.

55. To the White Supremacist, the non-white person does not deserve the same level of compensation as a white person.

FILED DATE: 7/19/2021 5:09 PM   2020CH06382

56. American white supremacy remains today.

57. Whites still attack synagogues. Author Bari Weiss has noted a rise in American antisemitism that seeks the elimination of Jewish people and Judaism itself.

58. Whites still attack Black churches.

59. Whites still exhibit hate and violence towards Asians, a trend sadly accelerating in 2021.

60. Defendant's use of the word "gook" is tied to a violent animus against Asians.

61. As in the case involving Plaintiff and Defendant, whites still deny non-whites the benefits of contracts enjoyed by whites.

62. Section 1981 provides that discrimination and retaliation directed at non-whites is prohibited.

63. This law attempts to strike at the heart of an entrenched caste system lead by white individuals that choose cruelty and bullying a certain "other" by denying benefits that are freely provided to whites.

64. Defendant expressed his dominance as a white person and made the intentionally racially discriminatory decision to withhold the revenue share owed to Plaintiff for the RiverPark project because Plaintiff is non-white, has non-white Asian children and Plaintiff made complaints about Defendant's racist conduct.

65. Defendant had no non-discriminatory reason to withhold the revenue share from Plaintiff.

66. The non-whiteness of Plaintiff and his children and racist retaliation is the only causal factor for withholding the share.

FILED DATE: 7/19/2021 5:09 PM   2020CH06382

67. Defendant's employment of racial epithets toward Plaintiff and his children

   evidence Defendant's discriminatory intent to harm Plaintiff's family by

   depriving Plaintiff and his family of money.

68. Defendant has a history of not fully compensating non-whites including Plaintiff.

69. Portis worked on continuing to develop an office building project known as

   "Riverpark".

70. McKinney proposed to Portis two ways to participate: 1. Put in no capital and

   receive 25% of McKinney's upside after return of capital 2. Put in $30,000 (about

   15% of the $275K McKinney would post) and receive 33% of McKinney's upside

   after return of both parties' capital.

71. Portis opted for the second choice and provided McKinney with a check for

   $30,000.

72. McKinney never cashed the check.

73. Portis told McKinney he is taking back the check and assumes he now has the

   "25% of upside" deal.

74. Portis would be contributing services to the project rather than property.

75. McKinney verbally confirms the arrangement, but nothing is formalized in

   writing.

76. In 2010, Portis and McKinney put the terms of the agreement in writing.

77. The agreement states in relevant part, "Pursuant to our discussion, this letter will

   reconfirm our oral contract that you are entitled to a 25% share (assuming no

   dilution, recapture or additional cash required from me which would modify that

   situation in any aggregate net positive cash flow income generated whether by

FILED DATE: 7/19/2021 5:09 PM   2020CH06382

rent, refinancing, proceeds greater than the equity, or sale as more appropriately addressed below. The proceeds will ignore the cost of any tax losses, etc. personal guarantees (except any funds spent by me enhancing or paying back any guarantees). This agreement continues subsequent to my death, your death, until my ownership position has expired. RiverPark-Techny - I believe my equity infusion was $385,000 (which will need to be verified) and we have received $90,000 of phantom income to date no real cash flow has been received but I personally paid 35% income taxes (32% - Federal and 3% lllinois) out of my pocket. Thus, whenever we receive net cash a described above that exceeds my total input of capital and the payment, you shall receive 25% of that cash income."

78. The Riverpark project has been fully leased for most of the last decade.

79. By December 2017, Portis was working to get McKinney to get his capital back in the RiverPark project.

80. McKinney and Riverpark investor Steve Friedman had a meeting where they agreed to distribute roughly $250,000 to each side (about half of net capital).

81. After that meeting, Portis told McKinney, that he was anxious to see his capital returned so Portis could begin realizing his 25% upside.

82. Portis has asked McKinney for his share of revenue from the Riverpark project. But McKinney has withheld the share of revenue from Portis.

83. But for the race of Portis and his children, McKinney would have paid Portis his share for the RiverPark project.

FILED DATE: 7/19/2021 5:09 PM   2020CH06382

84. Plaintiff did not have the same enjoyment of all of the benefits, privileges, terms and conditions of contractual relationships that Defendant normally extends to whites in similar projects.

85. Defendant intended to harm Plaintiff because he is non-white, has non-white children and complained about his racist conduct.

86. Defendant intended to retaliate against Plaintiff.

87. Defendant's violation of Section 1981 caused Plaintiff to suffer pain, inconvenience, mental anguish, emotional distress, humiliation, out-of-pocket costs, loss of reputation, loss of enjoyment of life and monetary loss.

Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff, Charles Portis, and against Defendant, John F. McKinney, for (1) actual damages for pain, suffering, inconvenience, mental anguish, emotional distress, humiliation, out-of-pocket loss, loss of reputation, loss of enjoyment of life and all monetary loss; (2) punitive damages; (3) costs, attorney's fees and expert fees; and (4) any other relief the Court deems proper.

Respectfully Submitted,
Plaintiff Charles Portis

/s/ Mark T. Lavery, Esq.
Plaintiff's Attorney

Mark T. Lavery, Esq.
15774 S. LaGrange Rd.
Orland Park, IL 60462
708-274-6803

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

CHARLES PORTIS,                    )
                                   )
    Plaintiff,                     )
                                   )
    vs.                            )     No. 20 CH 6382
                                   )
JOHN F. MCKINNEY,                  )     Judge Alison C. Conlon
                                   )
    Defendant.                     )

### ORDER

    This matter coming to be heard for a Court status, the parties given due notice, and the Court being fully advised in the Premises,

    IT IS HEREBY ORDERED THAT:

(1) Defendant shall file a response to the amended complaint on or before August 25, 2021.
(2) The case is continued for further Court status to September 8, 2021 at 9:30 a.m. via Zoom.

    Judge Conlon's Zoom information is as follows:

    Zoom Meeting ID Number: 974 5431 3798
    Password: 501494



ENTERED:    Judge Alison C. Conlon
                    AUG 04 2021
                   Circuit Court – 2140

_____
Judge Alison C. Conlon          Judge's No.

Forde & O'Meara LLP - #64371
Brian P. O'Meara
111 West Washington Street, Suite 1100
Chicago, IL 60602
(312) 641-1441